Judge Green.
I think, that upon a just construction of the various acts of Assembly, passed from time to lime before that of February, 1831, upon the subject, the Sheriff was bound ex ojjiclo as Sheriff, (if appointed by the Overseers of the Poor to do so, but not otherwise.) to collect the levies for the support of the poor, generally called poor-rates; and that it was not necessary that he should execute a separate bond with security, to the Overseers of 1he Poor, as collector of the poor-rates; but, he was hound by his official bond, together with his sureties thereto, to collect and account for them, if appointed to do so by the Overseers, but not otherwise. It is unnecessary to go at large into an examination of those Acts of Assembly in this case, as the cause !urns on another point, on which the appellants are entitled to a judgment in their favor.
The jury have found, that Munford was not appointed by the Overseers of the Poor, to collect the poor-rates, unless a judgment recovered by the Overseers against him, as collector, was conclusive evidence of that fact; that is, unless such judgment precluded and estopped the sureties from giving any evidence going to contradict that fact.
The question, how far sureties are bound by a judgment, or other evidence against their principal, which estops or concludes him, has never, as far as I am informed, been settled in this Court, except in the case of Baker v. Preston, and his sureties, Gilm. Rep. p. 235, decided in a Special Court. In that case, it was decided, that the Treasury books kept by Preston, were conclusive evidence against him, and estopped him from giving any evidence to contradict them, and that his sureties were in like manBc.t estopped and concluded, The Court argued* that if a *316 judgment against tlie principal would conclude his sureties'; g0 0Ug}^ the evidence on which such judgment is rendered, to conclude them; and the case of Braxton v. Winslow, 1 Wash. 31, and Greensides v. Benson, 3 Atk. 248, were the cases, and the only cases relied upon, to shew that a „ ’ . .... judgment against the principal was conclusively binding on the sureties. No such point was decided in Braxton v. Winslow, either as reported in 1st Washington, or in Call’s manuscript report of the case; and, neither the Court, in the judgment reported in Washington, nor any Judge, (all of whom gave their opinions seriatim, as reported in Call’s manuscript,) intimated, in the most remote way, that a judgment, either in the first instance against the executor, establishing the demand against the testator’s estate, or an after-judgment against the executor, establishing a devastavit by him, were, to any purpose, conclusive against the sureties. They only decided, that until a creditor had established his demand and a devastavit by such judgments, he was not entitled to sue the sureties of the executor, upon the official bond of the executor. So far as the Court decided, that it was necessary to establish a devastavit against the executor in a separate suit against him, before a suit could be maintained against his sureties, the decision was extra-judicial, as the question did not arise in that case; yet, it was considered as giving the law of the country, until it was corrected by a Legislative act. The Court, however, might well have decided, that an original judgment against the executor, so far as it went to establish a demand against the estate of the testator, could not be controverted by the sureties of the executor in a suit upon his official bond. For, the condition of that bond is, that the executor shall administer the assets according to law. A judgment, whether rightful or wrongful, until reversed, bound the assets; and, according to law, the executor was bound to apply the assets in a due course of administration, to the payment of such judgment; and, if he failed to do so, the bond was forfeit- *317 t¡d. A.s to the case put in the report of Braxton v. Winslow, both in print and manuscript, by way of illustration, (of the correctness of which I doubt,) the Court did not intimate that a judgment against C. would be conclusive of the amount of the debt against B.
The case of Greensides, &c. v. Benson, &c., as reported in the first edition of Alkyns, is almost unintelligible; but, even from that report, when analized, it can be ascertained, that, in fact, the judgment against the administratrix did not, in any way, operate to the prejudice of her sureties; nor, was it used against them to any purpose. For, it was admitted by the counsel for the plaintiffs, that a true inventory had not been returned; and that fact was established by the judgment against the sureties, without resorting to the. judgment against the administratrix; and the sureties had the same relief precisely, as if no judgment had been rendered against the administratrix establishing ii. devastavit. The observations attributed to the Chancellor, in relation to the effect of that judgment, if made, were not followed up in the decree; and, it appears from a copy of the decree from the Register, (in a note to the report of the case in the last edition of Alkyns,) that the report was erroneous; for, the decree was, that the injunction should be continued until an account was taken of the administration of the assets by the administratrix, without regard to the judgment against her (which ascertained that she had £ 226 in her hands, unadministered;) and that, upon her paying, or her sureties paying, the balance of the assets found not to be duly administered upon such account, and a,ll costs, the injunction should be perpetuated; or, in case of a failure to pay such balance and costs, the judgment for the penalty of the administration bond, should stand as a security only for such balance, and the costs. This case is also reported in Ridgeway; and a totally different representation of the observations of the Chancellor is there given, from what they are represented to be in Alkyns. In Ridgeway, the Chancellor is report *318 ed to have said, that the sureties ought not to be bound by ^he judgment against the administratrix, it being a judgment by default, and they not being parties to the suit. And that this was really the ground upon which the Court proceeded, appears from the terms of the decree, copied from the record, which corresponds with the declaration attributed to the Chancellor, in Ridgeway’s report of the case. This case is abridged, to a different purpose, in the 6th volume of the supplement to Viner’s Abridgement, and is cited in 1 Coose’s Cases, p. 401; where it is said to be wrongly reported in Atkyns; and I do not perceive that the case has been, any where else, explained, commented on, or even cited. I think, therefore, that the question is still open, whether a judgment against the principal is conclusive evidence against the sureties, or not.
The general rule is, that verdicts and judgments bind conclusively, parties and'privies; because, privies in blood, in estate, and in law, claim under the person against whom the judgment is rendered; and they, claiming his rights, are, of course, bound as he is. But, as to all others, they are not conclusively binding; because, it is unjust to bind a party by any proceeding, in which he had no opportunity of making a, defence, of offering evidence, of cross-examining witnesses, or of appealing, if he was dissatisfied with the judgment; and this is called by the Court, in Burke v. Granberry, “a golden rule.” Gilm. Rep. 25. Sureties, and joint contractors, do not claim, to any purpose, under their principal, or under each other. There are cases, in which those who are not parties to the suit, and do not claim under either of the parties, may be bound by the judgment, as in the cases of contracts of indemnity, and in the nature of contracts of indemnity, and in those cases in which a person, although not in form a party to the suit, is bound to assist in the prosecution or defence, and either does so in fact, or, having notice of the pendency of the suit, fails to do so. But, these cases do not - come within the principle or reason of the general rule *319 ¡aforesaid; and, tlio case of principal and surely, so far as it reiates to the effect, upon the sureties, of a judgment against the principal, does not come within the reason of this latter class of cases, but within the general rule. In 10 Vin. Abr. 464, it is said: “If A. and 13. be bound in , , a, i’ecoguizauee that 13. shall keep the peace, and un a scire facias against 13. it is found that ho broke the peace, in another scire facias against A. he shall not be estopped hy the first trial.” So, if A. binds himself to pay for goods sold and delivered to B., 1he admission of B. as to the amount of fbe goods sold and delivered to him, is not even, admissible evidence, in a suit against A. 5 Msp. Oases, 3G; and so, 1 presume, if A. and 33. were to cove-nan! , that if 13. should pay for goods furnished to him, and if he did not, that A. would; the admissions of B. as to the amount of the goods sold to him, would be inadmissible as evidence against A.; and, a judgment against B. founded on his admissions, ought ib be no inoro evidence against A. than I3‘a admission would be. The decision.'' of this Court, that the admissions of one partner, after the dissolution of the partnership, are no evidence against the other partners, whether the partners be defendants, as in Shelton v. Cocke, Crawford & Co., 3 Munf. 191, or plaintiffs, as in Rootes v. Welford & Co., 4 Munf. 215, seem to me to have a strong bearing upon the question in this cause. During the continuance of the partnership, each partner may bind the firm by parol, as any man may hind himself; and, although this power is lost by a dissolution of the partnership, yet, all the partners, after dissolution, are subject to joint obligations as to their partnership transactions, as completely as principal and sureties, or any other joint contractors are, by deed.
By' the rule of the civil law, a judgment against the principal, whilst in force, is conclusive against his sureties. But, this is because the sureties are permitted to controvert the judgment against the principal, even if it be a judgment of a Court of final resort. No such privilege is giveft to sureties by our law.
*320 Nor can the creditor complain of the burthen of proving p¡s case repeatedly, in different suits, against the principal and his sureties; for, generally he can, if he will, convene them all in one suit, and so avoid that inconvenience. In flle case at har, the Overseers of the Poor might have proceeded against the Sheriff, and his sureties, jointly, in the first instance. In those cases where, from any cause, a creditor cannot convene, in one suit, the principal and sureties, it is better that he shall suffer the inconvenience of proving his case in such suit, than that the sureties should be conclusively bound by a proceeding, in which they could not be heard in their, defence.
Upon the whole, I do not think that any judgment against Munford only, can be conclusive evidence against his sureties, as to the fact of his being appointed to collect the poor-rates. From the finding of the jury, I should infer, that proof was given by the sureties, that, in fact, Munford was not appointed by the Overseers of the Poor to collect the poor-rates, and that the judgment against him, proceeded upon the supposition, that he, as Sheriff, was ex officio bound to collect the poor-rates, without such appointment. Whether this were so, or not, is immaterial to the question, whether the sureties were bound conclusively by the judgment. For, such may have been the fact; and the possibility of such a state of things demonstrates the impropiety of holding the sureties conclusively hound by a judgment against the principal, which they had no opportunity to resist or impeach. In this case, the principal and his sureties were sued and pleaded, jointly; and, it may be supposed, .that, as the former judgment was conclusive evidence against Munford, it might, upon the issue in this cause, be given in evidence against him; and, as it bound him, so it must bind them, or, at least, that upon such evidence, a verdict and judgment should be given against him. To this, it is to be observed, that the plaintiffs, alledging a joint responsibility, must prove the case which they alledge, or fail in their action in toto: *321 shat the sureties, having a right to repel this evidence by any other in their power, and, having done so effectually, thereby negatived the allegation of a joint responsibility, and so destroyed the plaintiffs’ action, as to Munford, as well as themselves; although, if Munford had been sued alone, he could not have resisted the evidence offered by the plaintiffs. Munford is entitled to be discharged in this action, not because-he is not liable to the plaintiffs’ demand, but because he is not liable, as they alledge, jointly with others. It is not intended by any thing said here, to decide upon the propriety of giving in evidence against the sureties, any thing which may be given in evidence against the principal. That might depend upon circumstances. But, when admissible, it must be taken with this limitation; that, whether such evidence he conclusive against the principal, or not, it is only prima facie evidence against them, and may be contradicted, repelled, or avoided; unless it be conclusive upon them, for some other reason, than that it is conclusive upon him.
The judgment should be reversed, and final judgment rendered for the appellants.
Judge Coalter.
I am of opinion, after a careful examination of all the acts of Assembly o.n the subject, that the Sheriff was bound to collect the poor-rates, if appointed to do so by the Overseers of the Poor; and, that his sureties in the bond sued on in this case, would be responsible for such collection. , I am also of opinion, that although by the law as it now stands, it is made the official duty of the Sheriff to collect those rates, and his sureties are, therefore, responsible therefor; yet, at the time this bond was given, they were not so responsible, unless he was appointed collector by the Overseers, and that, consequently, to charge them, it must appear that he was so appointed.
*322 I am further of opinion, that as well on general principieSj as because it migjit not be competent for the Sheriff, if in fact he did collect the. poor-rates, to deny his appointment, the judgment against him for those rates is not conciusive as to his sureties, that he was so appointed.
. . ' I say this judgment is not conclusive on general principles. Peake on Evidence, vol. 1, p. 26, says, “a judgment of a debt is conclusive evidence of it against the parties; but, as against third persons, a verdict, in a civil case, is no evidence whatever; for, the first principles of natural justice require that a man should be heard, before his cause is decided; and, if he were bound and in the least degree prejudiced by a verdict, when he had no opportunity to cross-examine the witnesses, it would, in effect, be overturning the most salutary rule of jurisprudence.” This point too, was, as I consider, decided in this Court in Buford v. Buford, 4 Munf. 243. The Court, there, did not overrule the objection taken; but, admitting its correctness, did not think that the opinion of the Court below went as far as was contended for.
But, if a Sheriff acts as such for the second year, without giving a new bond, or taking a new oath of office, it will not lie in his mouth, nor, as I suppose, in that of his deputy acting under him, to say he was not Sheriff, although the sureties will not be bound for his acts in the second year. I apprehend, that it is not competent for the Sheriff or deputy, acting as such de facto, to say they are not such de jure. Lane v. Harrison, 6 Munf. 573.
It would be strange, then, in this case, to say, that though the Sheriff may have been estopped to say that he was not collector, his sureties should be concluded by that judgment.
The case, then, must be considered not only as one in which there is a total absence of such proof, except what , may be prima facie inferred from the judgment aforesaid; hut, in which it was proved that no such appointment was *323 made, and consequently the judgment must be reversed, and entered for the appellants.
Judge Cabell.
1 entirely concur in the opinions of the other Judges, and also, in the resolution to reverse the judgment, and to enter iinal judgment for the appellants. *

 Judge Brooke, absent.